UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISON

| | |
|---|---|
| YOLANDA DOBBINS; LILY GODINEZ; and MEGAN NORDYKE, on behalf of themselves and all others similarly situated, § § § § § § Plaintiffs, § v. § § THE CITY OF DALLAS, § § Defendant. § § | CIVIL ACTION NO. 3:20-cv-1727 JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiffs YOLANDA DOBBINS ("Ms. Dobbins"), LILY GODINEZ ("Ms. Godinez"), and MEGAN NORDYKE ("Ms. Nordyke") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, files this First Amended Complaint for damages and other legal and equitable relief from Defendant the CITY OF DALLAS ("Defendant"), for violations of their rights under the United States Constitution, including protections against unreasonable searches and seizures under the Fourth Amendment, violations of 42 U.S.C. § 1983, and any other cause(s) of action that can be reasonably inferred from the facts set forth herein.

## INTRODUCTION

1.  This is an action brought by Plaintiffs seeking damages from Defendant for acts of unlawful arrest, excessive force, inadequate training, and negligent hiring, retention, and supervision, First Amendment deprivations committed by members of the Dallas Police Department as agents of Defendant. Plaintiffs bring this action on behalf of themselves, and those similarly situated, as Defendant subjected lawful protestors to unlawful arrest and excessive force

in violation of Plaintiffs' constitutional rights. Plaintiffs seek injunctive relief to put an end to Defendant's policies that violate §1983 and the U.S. Constitution and that continue to threaten Plaintiffs' constitutional right to peacefully and nonviolently protest in the City of Dallas.

2. Plaintiffs participated in peaceful protests in the City of Dallas. Plaintiffs, and others similarly situated, did not participate in unlawful activity, but were arrested, charged, and jailed overnight for their presence at protests.

3. Defendant arrested citizens participating in lawful protest throughout the city. Defendant's officers ignored protestors' peacefulness and their attempts to comply with officer directions, instead opting to punish people for their presence and their protests, not their actions. Defendant used the arm of the law to put a stranglehold on protected expression that was critical of them. Defendant's officers arrested protestors *en masse*, employing excessive force in the process with the clear intent to intimidate protestors and chill free speech.

4. As a result of Defendant's unlawful actions, Plaintiffs are entitled to injunctive relief to prevent future violations of their rights under the United States Constitution, including protections against unreasonable searches and seizures under the Fourth Amendment; deprivation of rights under 42 U.S.C.A. § 1983; and any other cause(s) of action that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress

providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. §§ 2000e *et seq.*, as amended, and (iii) 42 U.S.C. §§ 1983 *et seq.*, as amended.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

7. Plaintiff Yolanda Dobbins is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, a citizen of the United States of America and a resident of the state of Texas.

8. Plaintiff Lily Godinez is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, a citizen of the United States of America and a resident of the state of Texas.

9. Plaintiff Megan Nordyke is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, a citizen of the United States of America and a resident of the state of Texas.

10. Defendant City of Dallas is located in the state of Texas and within the Northern District of Texas, Dallas Division.

## STATEMENT OF FACTS

11. On the night of May 29, 2020, protests began in Dallas and across the country in protest of the murder of George Floyd at the hands of police officers and in support of the Black Lives Matter movement.

12. By and large these protests were peaceful marches honoring the life of George Floyd, demanding that the police who killed him be brought to justice, and demanding police reforms to prevent future injustice.

13. However, peaceful protestors exercising their First Amendment rights were met with violent resistance from law enforcement.

14. Police officers employed by the Defendant City of Dallas (the "Dallas Police") used tear gas to break up peaceful protests and fired projectiles into crowds, often at close range.

15. Dallas Police also rounded up and arrested nonviolent protestors, often without telling them what they would be charged with at the time, and held them overnight in Dallas County's jail on charges of riot participation, obstruction of a roadway, and curfew violations—despite the peaceful nature of the protests.

16. Dallas Police used their power in a manner that targeted peaceful protestors engaged in protected First Amendment activity – arresting protestors without probable cause, lying in police reports justifying arrests, and shooting innocent people with various "less lethal" tools.

17. These actions taken by the Dallas Police and authorized by Defendant City of Dallas were intended to suppress protected First Amendment activity. Dallas Police and Defendant City of Dallas attempted to quash future protests by intimidating peaceful protestors and threatening them with future criminal charges for continuing to exercise their constitutional rights.

### FACTS SPECIFIC TO YOLANDA DOBBINS

18. Plaintiff Yolanda Dobbins is a fifty-five-year-old Dallas resident.

19. Ms. Dobbins accompanied her teenage daughter to a march near Interstate 35E.

20. Due to the many road closures in the area, Ms. Dobbins and her daughter followed a group of protestors who started towards the highway.

**FIRST AMENDED COMPLAINT**

4

21. Police arrived and began firing projectiles into the crowd.

22. Ms. Dobbins and her daughter were separated as her daughter attempted to run from the projectiles. As they were separated, Ms. Dobbins witnessed a Dallas Police squad car attempt to ram her daughter.

23. As Ms. Dobbins yelled for her daughter, police surrounded Ms. Dobbins and arrested her.

24. As Ms. Dobbins was being arrested, she asked the officers to see if her teenage daughter was physically safe. The officers refused and told her that if she wanted her daughter to be safe "she should have thought of that before coming to protest."

25. Despite not being on the highway or even on the ramp to the highway, Ms. Dobbins was charged with obstructing a highway under Texas Penal Code § 42.03.

26. Ms. Dobbins did not learn until after she was released that her daughter was safe and with family.

27. While incarcerated, Ms. Dobbins asked for a cup of water. The jailer denied her request, and told her "You should have thought about that before you came down here [to protest]" in an attempt to dissuade Ms. Dobbins and those similarly situated from exercising their First Amendment rights.

## FACTS SPECIFIC TO LILY GODINEZ

28. Plaintiff Lily Godinez is a twenty-year-old Dallas resident.

29. On May 30, 2020, Ms. Godinez was standing by her car holding a sign that said "Black Lives Matter."

30. Dallas Police in the area where Ms. Godinez had parked instructed protestors to leave and used tear gas to disperse protestors.

**FIRST AMENDED COMPLAINT**
5

31. When Ms. Godinez pulled out her car keys to leave, two Dallas police officers tackled her from behind, slammed her to the ground face first, and pinned her face-down on the ground with a riot shield on her head.

32. When Ms. Godinez stated to the officers arresting her that she had not done anything wrong, the officers replied, "you were holding a sign, you were doing something [wrong]" – making clear that she was being arrested for exercising her First Amendment rights by holding a sign that said "Black Lives Matter."

33. Ms. Godinez was arrested and charged with riot participation under Texas Penal Code § 42.02.

34. While under arrest, Ms. Godinez was told by a Dallas Police officer "you should have just stayed home" in an attempt to dissuade Ms. Godinez and those similarly situated from exercising their First Amendment rights.

35. One Dallas County jailer specifically stated they would not have been jailed and be subjected to these conditions "if they had just stayed at home."

36. Ms. Godinez was kept in a Dallas jail until she was bailed out the next morning.

**FACTS SPECIFIC TO MEGAN NORDYKE**

37. Plaintiff Megan Nordyke is a thirty-five-year-old Dallas resident.  She is an attorney duly licensed to practice law in the State of Texas.

38. As an attorney, Ms. Nordyke attended the protests near Dallas City Hall as an unofficial legal observer.

39. She carried a handmade sign stating "The eyes of justice are watching" on one side and "I'm not the only lawyer here" on the other side.

40. Throughout the evening, Ms. Nordyke attempted to diffuse tensions and discourage provocations between the Dallas Police and protestors.

41. As she attempted to leave, a Dallas Police officer pointed a weapon at her. Ms. Nordyke was unarmed, did not have a weapon, and immediately sat down.

42. When no further directions came, Ms. Nordyke moved to sit in front of Dallas City Hall with her sign resting against her legs.

43. As she was sitting, Dallas Police officers in riot gear approached her and told her they were arresting her for not following instructions.

44. Ms. Nordyke did not hear any instructions from the officers.

45. Ms. Nordyke was arrested and charged with riot participation under Texas Penal Code § 42.02.

## FACTS COMMON TO ALL PLAINTIFFS

46. Plaintiffs, and those similarly situated, all spent the night in the Dallas County jail.

47. Plaintiffs, and those similarly situated, were either peacefully participating in the protests or attempting to leave safely when arrested.

48. Plaintiffs, and those similarly situated, were released the following day when they each paid a bond of at least $500. This bond has yet to be refunded to any of the Plaintiffs.

49. Plaintiffs, and those similarly situated, were not informed that their charges would be dropped until being interviewed by the Dallas police in September 2020.

50. Despite their treatment by police, Plaintiffs foresee participating in peaceful protests in the future and fear further intimidation and arrest under similar overbroad and unconstitutional applications of Texas Penal Code § 42.02 and Texas Penal Code § 42.03 by Defendant.

## RULE 23 CLASS ACTION ALLEGATIONS

51. Plaintiffs bring this action pursuant to FED. R. CIV. P. 23(b)(3), on behalf of a class of individuals who participated in lawful protest and were arrested during the relevant time period or who will participate in lawful protest and be arrested subject to Defendant's policies in violation of §1983 and the U.S. Constitution. All requirements of class certification are met by the proposed class.

52. The Class which Plaintiff Dobbins seeks to represent is defined as follows:

> All individuals who, during the relevant time period, were or will be engaged in peaceful, nonviolent protest in the city of Dallas and charged under Texas Penal Code § 42.03.

53. The Class which Plaintiffs Godinez and Nordyke seek to represent is defined as follows:

> All individuals who, during the relevant time period, were or will be engaged in peaceful, nonviolent protest in the city of Dallas and charged under Texas Penal Code § 42.02.

54. The number of class members who have suffered from Defendant's violations of §1983 and the U.S. Constitution, as set forth herein, are too numerous to join in a single action, necessitating class recognition. *See* FED. R. CIV. P. 23(a)(1).

55. All questions relating to the Class's allegations under §1983 and the U.S. Constitution share a common factual basis with those raised by the claims of Plaintiffs. The claims of Plaintiffs are typical of those asserted by the class members. *See* FED. R. CIV. P. 23(a)(3).

**FIRST AMENDED COMPLAINT**

56. Plaintiffs will fairly and adequately represent the interests of all members of the proposed class. *See* FED. R. CIV. P. 23(A)(4).

57. Plaintiffs seek prospective injunctive relief so that the Class may continue to assert their constitutional right to peacefully, nonviolently protest in the City of Dallas without fear.

58. A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendant violated §1983 and the U.S. Constitution by engaging in policies and practices that discriminated against peaceful protestors.

59. The class members of the proposed Class are readily discernable and ascertainable. Contact information for all members of the proposed Class are readily available to Defendant through the arrest records at issue in this case. Notice of this class action can be provided by any means permissible under the Rule 23 requirements.

60. Plaintiffs assert these claims on their own behalf as well as on behalf of the Class Plaintiffs through their attorneys who are experienced in class action litigation as well as civil rights litigation.

61. Plaintiffs are able to fairly represent and properly protect the interests of the absent members of the proposed Class and have no interests conflicting with those of the proposed Class.

62. The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual Class Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the class's interests without their knowledge or contribution.

63. The questions of law and fact that are nearly identical for all class members make proceeding as a class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed Class, continued violations of §1983 and rights under the U.S. Constitution will undoubtedly continue.

## AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### 42 U.S.C.A. § 1983, Civil Action For Deprivation of Rights
### (Unlawful Arrest)

64. Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

65. The conduct alleged herein deprived Plaintiffs and others similarly situated of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment right to be free from unreasonable searches and seizures and freedom from deprivation of life and liberty without due process of law.

66. Defendant had a policy and/or practice of unlawfully arresting peaceful protestors without probable cause. Officers employed by Defendant systematically arrested protesters regardless of whether they complied with instructions when asked, created any immediate danger of damage to property or injury to persons, obstructed law enforcement, used any force toward anyone, ever moved on to a roadway or highway, or committed any violent acts.

67. As evidence of a policy and/or practice adopted by the City of Dallas, Police Chief Reneé Hall and the Dallas Police Department reviewed the actions of Dallas Police Officers during the protests in an August 14, 2020 After-Action Report presented to the City Manager and the Dallas Public Safety Committee and wholly approved the actions of the officers. In fact, the Report affirmatively lauded the officers for complying with Defendant's policies, stating that "[o]fficers displayed heroic acts of restraint and worked within the department's Use of Force Policies."

68. Further, the After-Action Report explicitly states that the Defendant adopted a "Mass Arrest Plan" in response to the peaceful protests, indicating an explicit policy from leadership of arresting protesters in large groups without regard to the probable cause underlying that arrest.

69. At no point in the Report is any disapproval expressed for any of the actions taken by Dallas police officers but only confirmation that all officers acted within Department policies. No officers have been disciplined.

70. The policy delineated above was actually known, constructively known and/or ratified by Defendant and its policymakers and was promulgated with deliberate indifference to Plaintiffs' rights under the Unites States Constitution. The known and obvious consequence of the policy delineated above was that police officers would be unlawfully arresting protestors. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

71. Consequently, the policy above was the moving force of Plaintiffs' constitutional deprivations and injuries, causing the injuries described.

72. Defendant subjected Plaintiffs to such deprivations by acting with malice or with actual intent to cause injury in the performance of their official functions.

73. Plaintiffs' requests for relief are set forth below.

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**42 U.S.C.A. § 1983, Civil Action For Deprivation of Rights**
**(Excessive Force)**

74. Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

75. The conduct alleged herein deprived Plaintiffs and others similarly situated of rights and privileges secured and protected by the United States Constitution and the laws of the United

States, namely the Fourth Amendment right to be free from excessive use of force against their persons during the course of an arrest.

76.  Defendant had a policy and/or practice of using excessive force, particularly in response to protestors exercising their First Amendment rights.

77.  As evidence of a policy and/or practice adopted by the Defendant, the August 14, 2020 After-Action Report presented by Chief Hall wholly approved the actions of the officers and the force used. Again, the Report affirmatively lauded the officers for complying with Defendant's policies, stating that "[o]fficers displayed heroic acts of restraint and worked within the department's Use of Force Policies." The Report evidences explicit approval of the officers' use of force as adhering to existing Use of Force Policies.

78.  At no point in the Report is any disapproval expressed for any of the actions taken by Dallas police officers but only confirmed that all officers acted within Department policies. No officers have been disciplined.

79.  The policy delineated above was actually known, constructively known and/or ratified by Defendant and its policymakers and was promulgated with deliberate indifference to Plaintiffs' rights under the Unites States Constitution. The known and obvious consequence of the policy delineated above was that police officers would be using excessive force in handling protestors. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

80.  Consequently, the policy above was the moving force of Plaintiffs' constitutional deprivations and injuries, causing the injuries described.

81.  Defendant subjected Plaintiffs to such deprivations by acting with malice or with actual intent to cause injury in the performance of their official functions.

82. Plaintiffs' requests for relief are set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
### 42 U.S.C.A. § 1983, Civil Action For Deprivation of Rights
### (Inadequate Training)

83. Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

84. Defendant are also liable because (1) their training procedures relating to protest management, arrest and mass arrest procedures, interactions with community members, and the use of force are inadequate; (2) Defendant's failure to adopt adequate policies and/or failure to sufficiently train officers on such policies constitutes deliberate indifference to the constitutional rights of the public; and (3) the inadequate training has directly caused Plaintiffs' damages.

85. Plaintiffs' requests for relief are set forth below.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
### 42 U.S.C.A. § 1983, Civil Action For Deprivation of Rights
### (First Amendment Deprivations)

86. Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

87. The conduct alleged herein deprived Plaintiffs and others similarly situated of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the First Amendment right to peaceful assembly and free speech.

88. Defendant adopted a policy and/or practice of suppressing Plaintiffs' rights under the First Amendment by arresting them for lawfully protesting, intimidating them, and using violence against them. Defendant used mass arrests, excessive force, and mass intimidation to discourage protestors from exercising their First Amendment rights. As alleged above, protestors were repeatedly told "you should have stayed home" and that "you were holding a sign" was the reason they were being arrested.

89. As evidence of a policy and/or practice adopted by the Defendant, the August 14, 2020 After-Action Report presented by Chief Hall wholly approved the actions of the officers. In the "Moving Forward" section of the Report on page 45, no mention is made of any policy adjustments to ensure that citizens exercising their rights in the future are not arrested *en masse* by officers telling them that their protesting is the reason they are being arrested. In fact, the Report only expressed substantive disapproval of the message of the protest itself, complaining of the "hateful words" spoken by protestors.

90. The policy delineated above was actually known, constructively known and/or ratified by Defendant and its policymakers and was promulgated with deliberate indifference to Plaintiffs' rights under the Unites States Constitution. The known and obvious consequence of the policy delineated above was that police officers would be using various tactics to discourage free speech and the exercise of First Amendment rights, including excessive force, mass arrests, and speech-chilling intimidation. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

91. Consequently, the policy above was the moving force of Plaintiffs' constitutional deprivations and injuries, causing the injuries described.

92. Plaintiffs' requests for relief are set forth below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendant as follows:

- A. A declaration that the practices complained of herein are unlawful and unconstitutional violations of the Plaintiffs' rights under U.S. Const. Amend. IV and 42 U.S.C. § 1983;

- B. Awarding Plaintiffs their reasonable and necessary attorneys' fees and expenses which Plaintiffs have incurred and will continue to incur during all trial and appellate court proceedings pursuant to 42 U.S.C. § 1988;

    C. That the Court retain jurisdiction over Defendant until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

    D. Awarding Plaintiffs such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Plaintiffs also seek injunctive relief, including, but not limited to:

    A. Training on appropriate use-of-force and de-escalation tactics for all law enforcement officials employed by Defendant;

    B. Supervisory discipline up to and including termination for any employee or agent of Defendants who engages in such unlawful arrest and excessive force;

    C. Supervisory discipline up to and including termination for any employee or agent of Defendants involved in the incidents described herein; and

    D. Monitoring by this Court to ensure that compliance by Defendant with all injunctive relief ordered by this Court.

Plaintiffs further demand that they be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

**FIRST AMENDED COMPLAINT**

Dated: September 30, 2020　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ David W. Henderson*
　　　　　　　　　　　　　　　　　　　　　David W. Henderson
　　　　　　　　　　　　　　　　　　　　　Texas State Bar No. 24032292
　　　　　　　　　　　　　　　　　　　　　dhenderson@equalrights.law
　　　　　　　　　　　　　　　　　　　　　Jay D. Ellwanger
　　　　　　　　　　　　　　　　　　　　　Texas State Bar No. 24036522
　　　　　　　　　　　　　　　　　　　　　jellwanger@equalrights.law
　　　　　　　　　　　　　　　　　　　　　**ELLWANGER LAW LLLP**
　　　　　　　　　　　　　　　　　　　　　400 S. Zang Blvd. Ste. 1015
　　　　　　　　　　　　　　　　　　　　　Dallas, TX 75208
　　　　　　　　　　　　　　　　　　　　　Telephone: (469) 998-6775
　　　　　　　　　　　　　　　　　　　　　Facsimile:  (469) 998-6775

　　　　　　　　　　　　　　　　　　　　　*COUNSEL FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

　　　I hereby certify that on September 30, 2020, a true and correct copy of the above and foregoing document was served on all counsel of record via the Court's ECF system.

　　　　　　　　　　　　　　　　　　　　　*/s/ David W. Henderson*
　　　　　　　　　　　　　　　　　　　　　David W. Henderson

**FIRST AMENDED COMPLAINT**