**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

YOLANDA DOBBINS et al.,            §
                                   §
              Plaintiffs,          §
                                   §        CIVIL ACTION NO.
v.                                 §
                                   §        3:20-CV-01727-K
THE CITY OF DALLAS,                §
                                   §
              Defendant.           §

<u>**DEFENDANT'S BRIEF IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT**</u>

CHRISTOPHER J. CASO
City Attorney

Stacy Jordan Rodriguez
Texas Bar No. 11016750
stacy.rodriguez@dallascityhall.com
Executive Assistant City Attorney

Tatia R. Wilson
Texas Bar No. 00795793
tatia.wilson@dallascityhall.com
Executive Assistant City Attorney

Kathleen M. Fones
Texas Bar No. 24050611
Kathleen.fones@dallascityhall.com
Senior Assistant City Attorney

Dallas City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
214-670-3519 / fax 214-670-0622

Attorneys for Defendant City of Dallas

# TABLE OF CONTENTS

I.    STATEMENT OF FACTS ................................................................... 1

II.    ARGUMENT AND AUTHORITIES ................................................... 2

    A.    Legal Standard for Motions to Dismiss ................................... 2

    B.    Municipal Liability Under 42 U.S.C § 1983 ........................... 3

        1.    Plaintiffs' § 1983 claims against the City premised on a policy or custom of unlawfully arresting peaceful protesters should be dismissed because Plaintiffs have failed to plead sufficiently facts which show an underlying constitutional violation. ................................... 5

        2.    Plaintiffs' § 1983 claims against the City must be dismissed because Plaintiffs have failed to sufficiently plead facts which show the City's final policymaker promulgated or ratified an official policy. ........................................................... 9

        3.    Plaintiffs' § 1983 claims must be dismissed because Plaintiffs have failed to plead sufficient facts to establish the existence of an official policy. ........................................................... 12

            a.    Plaintiffs do not plead facts that show a custom of City employees depriving citizens of their constitutional rights under the Fourth Amendment. ............................................. 13

            b.    Plaintiffs fail to plead adequately their failure-to-train claim ........................................................... 15

            c.    Plaintiffs do not identify any municipal policy or custom that deprives citizens of their constitutional rights under the First Amendment. ................................................. 17

            d.    Plaintiffs have failed to plead facts sufficient to permit a reasonable inference of deliberate indifference by the City's final policymaker. ............................................. 19

        4.    Plaintiffs' § 1983 claims must be dismissed because Plaintiffs have failed to sufficiently plead facts which show any alleged policy or custom was the moving force behind the alleged violation of their constitutional rights. ................................................... 20

CONCLUSION ............................................................................... 22

CERTIFICATE OF SERVICE ........................................................ 23

i

## TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver*,
  510 U.S. 266 (1994) ................................................................................ 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................ 2, 3, 16, 20

*Bd. of County Com'rs of Bryan County v. Brown*,
  520 U.S. 397 (1997) ............................................................................ 4, 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 2, 3

*Bennett v. City of Slidell*,
  728 F.2d 762 (5th Cir. 1984) ............................................................... 14

*Bennett v. City of Slidell*,
  735 F.2d 861 (5th Cir. 1984) ............................................................... 19

*Brown v. Lyford*,
  243 F.3d 185 (5th Cir. 2001) ................................................................. 6

*Burge v. St. Tammany Parish*,
  336 F.3d 363 (5th Cir. 2003) ............................................................... 19

*Byers v. Navarro Cnty.*,
  2012 WL 677203 (N.D. Tex. Mar. 1, 2012) ........................................ 15

*Carnaby v. City of Houston*,
  636 F.3d 183 (5th Cir. 2011) ............................................................... 16

*City of Canton v. Harris*,
  489 U.S. 378 (1989) .............................................................................. 16

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ................................................................. 2

*Connick v. Thompson*,
  563 U.S. 51 (2011) ............................................................................... 16

*Coon v. Ledbetter*,
  780 F.2d 1158 (5th Cir. 1986) ............................................................. 18

*Cornish v. Corr. Servs. Corp.*,
  402 F.3d 545 (5th Cir. 2005) ................................................................. 4

*Cox v. City of Dallas*,
  430 F.3d 734 (5th Cir. 2005)..................................................................... 5

*Doerr v. Sisson*,
  No. 1:09-CV-00199-GHD, 2013
  WL 3340487 (N.D. Miss. July 2, 2013,
  *aff'd*, 563 F. App'x 291 (5th Cir. 2014) ................................................. 21

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008).................................................................... 3

*Estate of Davis ex rel. McCully v. City of
  North Richland Hills*,
  406 F.3d 375 (5th Cir. 2005)............................................................. 15, 20

*Flagg Bros., Inc. v. Brooks*,
  436 U.S. 149 (1978) .................................................................................. 4

*Fraire v. City of Arlington*,
  957 F.2d 1268 (5th Cir. 1992)......................................................... 15, 21

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011)..................................................................... 1

*Groden v. City of Dallas*,
  826 F.3d 280 (5th Cir. 2016)........................................................ 9, 10, 11

*Haggerty v. Tex. Southern Univ.*,
  391 F.3d 653 (5th Cir. 2004)..................................................................... 6

*Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*,
  543 F.3d 221 (5th Cir. 2008)..................................................................... 4

*Harrington v. Harris*,
  118 F.3d 359 (5th Cir. 1997)..................................................................... 4

*Languirand v. Hayden*,
  717 F.2d 220 (5th Cir. 1983), *cert. denied*,
  467 U.S. 1215 (1984) .............................................................................. 15

*Lozman v. City of Riviera Beach*,
  138 S. Ct. 1945 (2018) ....................................................................... 17, 18

*McConney v. City of Houston*,
  863 F.2d 1180 (5th Cir. 1989).................................................................. 15

*Mohamed for A.M. v. Irving Indep. Sch. Dist.*,
  252 F. Supp. 3d 602 (N.D. Tex. 2017)................................................ 10, 14

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ................................................................ 4, 11

*Pena v. City of Rio Grande City*,
    879 F.3d 613 (5th Cir. 2018) ............................................... 19

*Peterson v. City of Fort Worth*,
    588 F.3d 838 (5th Cir. 2009) ................................... 12, 16, 18

*Pineda v. City of Houston*,
    291 F.3d 325 (5th Cir. 2002) ............................................... 14

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir. 2001) ............................... 4, 5, 14, 19, 20

*Piotrowski v. City of Houston,*
    51 F.3d 512 (5th Cir. 1995) ............................................... 5

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ................................................ 3

*Roberts v. City of Shreveport*,
    397 F.3d 287 (5th Cir. 2005) ............................................... 15

*Smith v. Brenoettsy*,
    158 F.3d 908 (5th Cir. 1998) ............................................... 20

*Spiller v. City of Texas City, Police Dep't*,
    130 F.3d 162 (5th Cir. 1997) ............................................... 14

*Valle v. City of Houston*,
    613 F.3d 536 (5th Cir. 2010) ................................................ 4

*Webster v. City of Houston*,
    735 F.2d 838 (5th Cir. 1984) ......................................... 9, 12, 13

*World Wide Street Preachers Fellowship*
    *v. Town of Columbia*,
    591 F.3d 747 (5th Cir. 2009) ............................................... 14

*Zarnow v. City of Wichita Falls*,
    614 F.3d 161 (5th Cir. 2010) ...................... 5, 9, 12, 13, 14, 16, 17, 18

**Federal Statutes**

42 U.S.C. § 1983 ................................................................ 3

**Texas Statutes**

Tex. Pen. Code § 42.02 ................................................................................................................ 7

Tex. Pen. Code § 42.03 ................................................................................................................ 7

**Rules**

Fed. R. Evid. 201 ........................................................................................................................ 1

Defendant City of Dallas (the "City") files this brief in support of its motion to dismiss Plaintiffs' First Amended Complaint (Dkt. No. 15) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In support, the City would show the Court as follows:

## I.    STATEMENT OF FACTS

On May 29, 2020, protests began in Dallas in support of the Black Lives Matter movement ("BLM").[1] (1st Am. Compl. ¶ 11.)  Largely peaceful demonstrations in Dallas on May 29 and May 30, 2020, devolved into several incidents of looting, vandalism, and violence, and led Mayor Eric Johnson to proclaim a local state of disaster on May 31, 2020.  (*See* City App, Ex. 1.)  The City understands that the Named Plaintiffs (Yolanda Dobbins, Lily Godinez, and Megan Nordyke) were all involved in George Floyd-protest-related demonstrations and arrested on or about May 30, 2020.  (*See, e.g.*, 1st Am. Compl. ¶ 29.) All charges against Plaintiffs have since been dropped.  (*Id.* ¶ 49.)

On June 30, 2020, Plaintiffs filed their original complaint alleging class action claims against the City and Dallas County related to their arrests.  (Dkt. No. 1.)  On September 9, 2020, and September 14, 2020, respectively, Dallas County and the City filed motions to dismiss. (Dkt. Nos. 9, 11-13.)  On September 30, 2020, Plaintiffs filed the operative complaint, which, among other changes, dropped Dallas County as a defendant.  (Dkt. No. 15.)  In their First Amended Complaint, Plaintiffs allege claims under 42 U.S.C. § 1983 for unlawful arrest,

---

[1] On May 25, 2020, George Floyd, a 46-year old African American man, died while in the custody of Minneapolis police officers after being handcuffed and pinned to the ground by an officer's knee in the area of his head and neck. Mr. Floyd's fatal encounter with the police led to community outrage and triggered nationwide protests.  Some of those protests and demonstrations escalated into civil disturbances and riots in multiple cities resulting in property damage and looting.  (*See* City App., Ex. 1 (May 31, 2020 Proclamation of Local State of Disaster).)  In a motion to dismiss, a court may take judicial notice of matters of public record.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *see also* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

excessive force, inadequate training, and First Amendment violations. (1st Am. Compl. ¶¶ 64-92.) In support of their assertions of an official policy or policies of the City, Plaintiffs rely solely on an after-action report issued by the Dallas Police Department ("DPD") on August 14, 2020 (the "Report").[2] In their prayer for relief, Plaintiffs seek declaratory and injunctive relief and attorneys' fees. (*Id.* at 12.) Although not included in the prayer for relief, the introduction to Plaintiffs' amended complaint asserts that Plaintiffs seek damages related to their claims, as well. (*Id.* ¶ 1.) The City now moves to dismiss all claims alleged against it in Plaintiffs' First Amended Complaint.

## II.    ARGUMENT AND AUTHORITIES

### A.    Legal Standard for Motions to Dismiss

Rule 12(b)(6) provides for the dismissal of a plaintiff's complaint when it fails "to state a claim upon which relief can be granted." In evaluating a motion to dismiss under Rule 12(b)(6), courts are to accept well-pleaded facts as true. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "Conclusory statements or legal conclusions couched as a factual allegation are not accepted as true." *Twombly*, 550 U.S. at 570. Plaintiffs must plead facts with enough specificity "to raise a right to relief above the speculative level" so as to "nudge their claims across the line from conceivable to plausible." *Id.* In short, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[2] A complete copy of the Report is attached as Exhibit 2 to the City's Appendix. In determining a motion to dismiss, a district court may consider documents referenced in a complaint that are central to a plaintiff's claim even if the documents are not attached to the complaint. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (noting that the complaint quoted "only part of what [Qwest's CEO] reportedly said . . . and the District Court was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn").

*Twombly*, 550 U.S. at 556).   "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 555).  Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679.  "[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted)).

**B.     Municipal Liability Under 42 U.S.C § 1983**

Plaintiffs assert claims against the City under 42 U.S.C. § 1983 for alleged violations of their First Amendment right to peaceful assembly and free speech, Fourth Amendment rights to be free from unreasonable searches and seizures and from excessive force, and for failing to adequately train its police officers in the areas of "protest management," "arrest and mass arrest procedures," "interactions with community members," and "the use of force."  (1st Am. Compl. ¶¶ 64-92.)   Section 1983 is not a source of substantive rights, but provides a vehicle for a plaintiff to vindicate federal rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  The statute provides a cause of action for individuals who have been deprived of their rights, privileges, or immunities secured by the Constitution and laws of the United States by a person acting under color of state law.  *Id.;*  42 U.S.C. § 1983.  Thus, to state a § 1983 claim, a plaintiff must allege facts that show (1) she has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155

(1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).   An underlying constitutional or statutory violation, therefore, is a predicate to liability under § 1983. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997).

Municipalities, including counties and cities, may be held liable under § 1983.  *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008).   The standards for imposing liability on local governmental entities like the City are well established.   A municipality does not incur liability under § 1983 for an injury caused solely by its employees, and therefore, it cannot be held liable based on a theory of *respondeat superior*.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).   The bar on vicarious liability means that a municipality can only be liable when it causes the constitutional violation.  *Monell*, 436 U.S. at 690-91.   Accordingly, municipal liability under § 1983 results only if a deprivation of constitutional or federally protected rights was caused by the execution of the municipality's official policy or custom.  *Monell*, 436 U.S. at 694; *Valle*, 613 F.3d at 541 (a plaintiff must show the deprivation of a federally protected right caused by an action taken pursuant to an official municipal policy to establish municipal liability under § 1983); *Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001) (the unconstitutional conduct about which the plaintiff complains must be directly attributable to the municipality through some sort of "official action or imprimatur").   To avoid *respondeat superior* liability and to impose liability on the municipality, the plaintiff must establish both the causal link (that the policy is the "moving force" behind the constitutional violation) and the municipality's degree of culpability ("deliberate indifference" to the known or obvious consequences of the municipality's unconstitutional policy).  *Bd. of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 415 (1997).

To establish municipal liability, a plaintiff must show: (1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose "moving force" is the policy or custom. *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005); *Piotrowski*, 237 F.3d at 578.  Proof of all three attribution principles is necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself, and to avoid municipal liability claims collapsing into *respondeat superior* liability. *Piotrowski*, 237 F.3d at 578; *Bryan County*, 520 U.S. 397 at 415; *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010).

Here, Plaintiffs' First Amended Complaint does not sufficiently plead facts to satisfy the pleading requirements necessary to prevail on any theory of municipal liability.  Plaintiffs' claims against the City, therefore, fail as a matter of law.  Accordingly, the Court should grant the City's motion in its entirety and dismiss Plaintiffs' claims against the City.

    **1. Plaintiffs' § 1983 claims against the City premised on a policy or custom of unlawfully arresting peaceful protesters should be dismissed because Plaintiffs have failed to plead sufficiently facts which show an underlying constitutional violation.**

To state a claim under § 1983, the Plaintiffs must allege facts demonstrating (1) a violation of rights secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person or entity acting under color of state law.  *Piotrowski v. City of Houston,* 51 F.3d 512, 515 (5th Cir. 1995).  Plaintiff Yolanda Dobbins ("Dobbins") alleges that she was unlawfully arrested by one or more nameless police officers and charged with obstructing a highway under Texas Penal Code § 42.03. (1st Am. Compl. ¶¶ 23, 25.) Similarly, Plaintiffs Lily Godinez ("Godinez") and Megan Nordyke ("Nordyke") allege that they were unlawfully arrested by unidentified Dallas police officers and charged with riot

participation under Texas Penal Code § 42.02.[3]  (*Id.* ¶¶ 33, 45.)  Plaintiffs' complaint, however, fails to plead sufficient factual content that allows the Court to draw the reasonable inference that either of the Plaintiffs was arrested without probable cause.

To prevail on their false arrest claims, Plaintiffs must allege facts which show that the unidentified arresting officers did not have probable cause to arrest them. *Haggerty v. Tex. Southern Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see also Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) (The "constitutional torts" of false arrest and unreasonable seizure require a showing of no probable cause).   Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. *Haggerty*, 391 F.3d at 655.

Under section 42.03 of the Texas Penal Code,

(a) A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:

(1) obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstruction arises from his acts alone or from his acts and the acts of others;  or

(2) disobeys a reasonable request or order to move issued by a person the actor knows to be or is informed is a peace officer, a fireman, or a person with authority to control the use of the premises:

(A) to prevent obstruction of a highway or any of those areas mentioned in Subdivision (1); or

---

[3]Dobbins does not identify or allege that the individuals who arrested her were Dallas police officers (1st Am. Compl. ¶¶ 18-27).  And none of the Plaintiffs expressly allege that the arresting officers were acting under color of state law.  (*Id.* ¶¶ 18-45.)  The City, however, does not move to dismiss the complaint based on these pleading deficiencies.

(B) to maintain public safety by dispersing those gathered in dangerous proximity to a fire, riot, or other hazard.

Tex. Pen. Code § 42.03.

Under section 42.02(b) of the Texas Penal Code, a person commits an offense if the person knowingly participates in a riot.  The statute defines "riot" as the assemblage of seven or more persons resulting in conduct which:

(1) creates an immediate danger of damage to property or injury to persons;

(2) substantially obstructs law enforcement or other governmental functions or services; or

(3) by force, threat of force, or physical action deprives any person of a legal right or disturbs any person in the enjoyment of a legal right.

Tex. Pen. Code § 42.02(a)(1-3).

Turning to Dobbins' Fourth Amendment false arrest claim, Plaintiffs do not allege that the arresting officers lacked probable cause to arrest Dobbins for obstructing a highway.  Instead, Plaintiffs allege that Dobbins was arrested even though she was not on the "highway or even on the ramp to the highway." (*Id.* ¶ 25.)   Those facts alone, however, do not establish a lack of probable cause here because a person may still commit an offense under § 42.03 without being on a highway or on the ramp to the highway.  Indeed, a person may also commit an offense if he refuses to obey a reasonable request or order issued by a peace officer for one of the reasons stated under section 42.03(a)(2)(A)-(B).  The Plaintiffs do not plead that the arresting officers lacked probable cause or allege sufficient factual content to allow the Court to draw the reasonable inference that the arresting officers lacked probable cause to arrest Dobbins.  (1st Am. Compl. ¶¶ 18-27.)  Therefore, Dobbins' Fourth Amendment claim fails as a matter of law.

Regarding Godinez and Nordyke's Fourth Amendment false arrest claims, Plaintiffs likewise fail to allege that the arresting officers lacked probable cause to arrest Godinez or

Nordyke.  According to the First Amended Complaint, Godinez was standing by her car holding a sign that said "Black Lives Matter," when Dallas Police instructed protesters to leave the area. Plaintiffs allege that Godinez pulled out her car keys to leave and was tackled from behind, slammed to the ground and pinned face-down on the ground with a riot shield on her head. When Godinez stated that she had done nothing wrong, the arresting officers told her that she was "holding a sign, you were doing something [wrong]." (*Id.* ¶¶ 29-33.)  Concerning Nordyke, the amended complaint alleges that Nordyke attended protests near Dallas City Hall as "an unofficial legal observer," and that when she attempted to leave, an unidentified Dallas police officer pointed a weapon at her and she immediately sat down.  The complaint further alleges that Nordyke moved to sit in front of Dallas City Hall, at which time unidentified Dallas Police officers in riot gear approached and told her that she was being arrested for not following instructions.  (*Id.* ¶¶ 38-43.)

Plaintiffs' complaint, however, is devoid of allegations which show that Godinez and Nordyke did not knowingly participate in a riot or an assembly of seven or more people resulting in conduct constituting a riot under the statute.  In other words, Plaintiffs' complaint does not plead that the arresting officers lacked probable cause or sufficient factual content to allow the Court to draw the reasonable inference that the arresting officers arrested Godinez and Nordyke without probable cause.  (1st Am. Compl. ¶¶ 18-45.)

Because Plaintiffs' complaint fails to allege facts which show that Plaintiffs were arrested without probable cause, their Fourth Amendment claims against the City fail as a matter of law. Accordingly, Plaintiffs' claims against the City premised on an alleged policy or custom of unlawfully arresting peaceful protesters fail to state a claim upon which relief can be granted, and dismissal of those claims is warranted.

**2. Plaintiffs' § 1983 claims against the City must be dismissed because Plaintiffs have failed to sufficiently plead facts which show the City's final policymaker promulgated or ratified an official policy.**

Plaintiffs also allege § 1983 municipal liability claims against the City for alleged violations of their rights under the First Amendment, excessive use of force, and failure to train. To establish the first attribution principle for municipal liability under § 1983, Plaintiffs must allege facts which show that a policymaker promulgated or ratified an official policy. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). A policymaker is one who takes the place of the governing body in a designated area of city administration. *Zarnow*, 614 F.3d at 166 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). In pleading this requirement, the Plaintiffs' First Amended Complaint must contain sufficient factual allegations to satisfy Rule 8(a)(2), as interpreted in *Iqbal* and *Twombly*, *supra*.

The Fifth Circuit recently clarified in *Groden v. City of Dallas* the pleading standard necessary to satisfy the policymaker element for municipal liability. In *Groden*, the plaintiff sued the City claiming that he was arrested pursuant to the City's alleged "crackdown policy" of unlawfully arresting vendors in Dealey Plaza to punish them for unpopular (but constitutionally protected speech). 826 F.3d. at 282-83. The City moved to dismiss the plaintiff's claims against it because the complaint did not specifically identify a final policymaker. *Id*. The district court granted the City's motion, and the plaintiff appealed. *Id.* at 283. On appeal, the Fifth Circuit reiterated that the identity of the policymaker is a legal rather than a fact question, and, therefore, a plaintiff is not required to specifically plead the identity of the policymaker to survive a motion to dismiss. *Id.* at 282. To sufficiently state a claim,

> [a plaintiff need] only to plead facts—facts which establish that [a] challenged policy was promulgated or ratified by the city's policymaker. [The plaintiff's] complaint did not need to supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme.

*Id*. at 285.  The Fifth Circuit determined that the plaintiff's allegations that the city "publicly announced a new policy" of cracking down on vendors in Dealey Plaza, and that the city's official "spokesman" "gave media interviews describing the new policy" were sufficient to connect the policy to the city council, and to permit a reasonable pleading inference that the alleged policy was attributable to an official policy made by the policymaker of the city (i.e., the city council).  *Id.* at 286; *see also Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 616 (N.D. Tex. 2017) (discussing the pleading requirement of a policymaker in light of *Groden*).

Here, Plaintiffs' First Amended Complaint fails to make such a connection.  Plaintiffs plead in Complaint paragraphs 14-16 that unidentified police officers "employed by the Defendant City of Dallas (the 'Dallas Police')," unlawfully arrested nonviolent protesters without informing of them of the charges made against them, held them overnight in Dallas County jail on charges of riot participation, obstruction of a roadway, and curfew violations, despite the peaceful nature of the protests; and used their power to target peaceful protesters engaged in protected First Amendment activity.  The complaint further alleges that the "actions taken by the Dallas Police" were "authorized by Defendant City of Dallas" and "intended to suppress protected First Amendment activity."  (1st Am. Compl. ¶ 17.)  Plaintiffs, however, do not allege that the unidentified employees who comprise the "Dallas Police" are policymakers of the City.  *Id.*  And they plead no facts to permit a reasonable inference that the "Dallas Police" or any other individual or entity promulgated or ratified any unconstitutional policy or custom.  (*Id.* at ¶¶ 11-17.)

While the operative pleading need not supply an answer to the legal question of the specific identity of the city's policymaker, Plaintiffs still must plead *some* facts establishing that

the alleged policy was promulgated or ratified by the City's final policymaker. *Groden*, 826 F.3d at 282. Notwithstanding Plaintiffs' failure to plead a policymaker, under Texas law, the final policymaker for the City is the Dallas City Council. *See Groden*, 826 F.3d at 286. Therefore, to show that the City acted unconstitutionally, Plaintiffs must plead nonconclusory facts which show, or facts from which the Court can reasonably infer, that the Dallas City Council promulgated an unconstitutional policy or ratified a persistent, widespread practice of city employees engaging in the alleged unlawful conduct about which Plaintiffs complain. Plaintiffs' complaint misses the mark.

Plaintiffs allege *no facts whatsoever* to allow the Court to draw the reasonable inference that the Dallas City Council was in any way involved either directly or indirectly in the alleged police misconduct that Plaintiffs plead in their complaint. (*See* 1st Am. Compl. at 3-7, 10-14.) Plaintiffs do not plead facts that connect the Dallas City Council to the alleged deprivations of the Plaintiffs' First Amendment rights to peaceful assembly and free speech, or to their Fourth Amendment rights to be free from unreasonable searches and seizures and the use of excessive force. Nor do Plaintiffs plead facts that permit a reasonable inference that the Dallas City Council promulgated or ratified any alleged policy of police misconduct. (*Id.*) Instead, Plaintiffs essentially seek to hold the City liable for constitutional violations caused by the alleged misconduct of unidentified employees of the City. This they simply cannot do under § 1983. *See Monell*, 436 U.S. at 694 (a local government may not be sued under § 1983 for injuries caused solely by its employees). Because Plaintiffs have failed to plead sufficient facts to establish the first essential element for municipal liability, they have failed to state a plausible claim as a matter of law, and the Court should grant the City's motion.

**3.     Plaintiffs' § 1983 claims must be dismissed because Plaintiffs have failed to plead sufficient facts to establish the existence of an official policy.**

Even if Plaintiffs have adequately pled the first element of their § 1983 municipal liability claim, Plaintiffs' First Amended Complaint falls short on the second essential element – proof of an official policy.   To establish this element, Plaintiffs must show that the alleged unconstitutional action constitutes a custom or policy of the municipality.  *Zarnow*, 614 F.3d at 168.  In the Fifth Circuit, a plaintiff can establish an "official policy" in a couple of ways.  First, a plaintiff may point to a policy statement, ordinance, regulation, or decision that has been officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority.   *Webster*, 735 F.2d at 841.  Alternatively, a plaintiff may show an official policy by demonstrating a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Id.*; *Zarnow*, 614 F.3d at 168-69; *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

Plaintiffs allege that the City had a policy of unlawfully arresting peaceful protesters without probable cause; using excessive force against protesters in response to exercising First Amendment rights; failing to adequately train police officers in the areas of protest management, arrest and mass arrest procedures, interactions with the community, and the use of force; suppressing Plaintiffs' rights under the First Amendment by arresting them for lawfully protesting, intimidating them, and using violence against them.  (1st Am. Compl. ¶¶ 64-92.)   As evidence of a policy allegedly adopted by the City, Plaintiffs point to an After-Action Report prepared by Chief of Police U. Reneé Hall and presented to the City Manager and the Dallas Public Safety Committee three months after the incidents giving rise to the Plaintiffs' claims. (*Id.*

¶¶ 67, 77, 89.)  Plaintiffs do not allege facts which show that the City Council was aware of the alleged policies contained in the After-Action Report at the time of the incidents giving rise to Plaintiffs' claims.  Plaintiffs do not allege that Chief Hall was a final policymaker, nor do they allege facts which show that the City Council delegated policymaking authority to Chief Hall in the area of law enforcement.  Thus, even if the After-Action Report was an official policy, which the City denies, Plaintiffs have failed to allege facts which establish that the City Council promulgated or ratified the policy.  Plaintiffs, therefore, have failed to plead sufficient factual content to allow the reasonable inference that the City is liable.

### a. Plaintiffs do not plead facts that show a custom of City employees depriving citizens of their constitutional rights under the Fourth Amendment.

Plaintiffs plead that City of Dallas police officers violated their Fourth Amendment rights when they allegedly unlawfully arrested them and used excessive force against Godinez during her arrest.  (1st Am. Compl. at 4-7.)  Plaintiffs do not sue any of the officers allegedly involved in their encounters.  And, as previously stated, Plaintiffs do not plead that any of the individual officers who comprised the "Dallas Police" were City policymakers, or that they were delegated policymaking authority.  Therefore, to establish an "official policy" that fairly represents municipal policy, Plaintiffs must plead facts that show a pattern of unconstitutional conduct by the Dallas Police.  *See Zarnow*, 614 F.3d at 169 (a plaintiff may demonstrate a "custom" by pointing to a pattern of unconstitutional conduct on the part of municipal actors or employees);[4] *Webster*, 735 F.2d at 842.  "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's

---

[4]A plaintiff also can demonstrate an "official policy" by showing that a final policymaker took a single unconstitutional action.  *Zarnow*, 614 F.3d at 169.  Here, the Plaintiffs do not plead that their alleged constitutional deprivations were caused by a single incident of unconstitutional conduct by the City's final policymaker.  (Compl. at 1-13.)

knowledge and acceptance of the disputed conduct." *Zarnow*, 614 F.3d at 169.  For the City to be held liable under § 1983, Plaintiffs must identify the official policy, connect the policy to the city itself and show that the injury was incurred because of the execution of that policy.  *Bennett v. City of Slidell*, 728 F.2d 762, 765 (5th Cir. 1984).

To establish an official policy premised on a custom of unconstitutional conduct, Plaintiffs must show that a constitutional deprivation was more than an isolated incident but was caused by a practice that was sufficiently widespread to constitute a custom that has the force of law.  *Mohamed for A.M.*, 252 F. Supp. 3d. at 618 (citing *Piotrowski*, 237 F.3d at 579).  Plaintiffs have not made these allegations.  Rather, Plaintiffs cite only to their separate isolated, allegedly unconstitutional incidents.[5]  (1st Am. Compl. at 3-7.)  However, a single incident is not enough to infer an official policy or custom.  *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753–54 (5th Cir. 2009); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002); *Piotrowski*, 237 F.3d at 581.  As Plaintiffs have failed to allege a custom that was the moving force behind their allegedly unconstitutional seizures and suppressions of constitutionally protected activities in violation of the First and Fourth Amendments, they have failed to state a plausible claim against the City and their claims should be dismissed.[6]

---

[5] Plaintiffs in their "Rule 23 Class Action Allegations" refer to "Defendants' policies in violation of § 1983 and the U.S. Constitution" (Compl. at 8 ¶ 1), and "policies and practices that discriminated against peaceful protesters." (*Id.* at 9 ¶ 8.)  Non-specific, vague, and conclusory allegations are insufficient to plead a policy.  *See Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162, 167 (5th Cir. 1997) (finding that vague and conclusory allegation that an officer was acting in compliance with the municipality's customs, practices or procedure insufficient to establish a policy).

[6] Plaintiffs plead that City employees (1) falsely arrested peaceful protesters who participated in lawful BLM demonstrations; (2) used excessive force against nonviolent protesters; (3) selectively enforced the law in a manner that targeted peaceful protesters engaged in protected First Amendment activity; (4) suppressed protected First Amendment activity by intimidating and threatening future arrests of protesters who continue to exercise their rights to peaceably assemble and express themselves; and (5) failed to adequately train police officers in the areas of arrest and use of force.  (1st Am. Compl. at 2-7, 10-14.)  Even if the Court construes these allegations as customary policies, Plaintiffs have failed to allege facts which demonstrate a pattern of unconstitutional conduct.  As the Fifth Circuit has explained, "[a] pattern . . . requires 'sufficiently numerous prior incidents,' as opposed to isolated

14

Because Plaintiffs essentially rely on their own individual single incidents, generalities, and conclusions, they have not sufficiently alleged an official policy or custom for municipal liability. Therefore, they have failed to state a plausible claim against the City under their First and Second Causes of Action, and those causes should be dismissed as to the City.

> b. *Plaintiffs fail to plead adequately their failure-to-train claim.*

As an alternative basis for a section 1983 claim against the City, the Plaintiffs assert a cause of action premised on a theory of "Inadequate Training." (1st Am. Compl. ¶¶ 83-85.) In support of that claim, Plaintiffs make the conclusory allegations that

> Defendant is also liable because (1) their [sic] training procedures relating to protest management, arrest and mass arrest procedures, interactions with community members, and the use of force are inadequate; (2) Defendant's failure to adopt adequate policies and/or failure to sufficiently train officers on such policies constitutes deliberate indifference to the constitutional rights of the public; and (3) the inadequate training has directly caused Plaintiffs' damages.

(Id. ¶ 84.) Plaintiffs purported failure-to-train claim fails as a matter of law.

Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim. *Byers v. Navarro Cnty.*, 2012 WL 677203, at *16 (N.D. Tex. Mar. 1, 2012) (Fitzwater, C.J.); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). The failure to provide proper training may fairly be said to represent a policy for which a municipality is responsible, and for which it may

---

instances." *Peterson*, 588 F.3d at 850 (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). The "plaintiff must at least allege . . . a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent . . . misconduct and/or that serious incompetence or misbehavior was general or widespread . . . ." *Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992) at 1278 (quoting *Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984)). Here, Plaintiffs only allege their isolated incidents, and general, non-specific, and conclusory allegations about incidents involving other "peaceful protesters." (1st Am. Compl. at 2-7.) Plaintiffs do not allege any prior incidents, let alone those "fairly similar to what ultimately transpired." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) at 383. Plaintiffs' allegations, therefore, are insufficient to establish custom based on a pattern of unconstitutional conduct.

be held liable if the failure to train reflects a "deliberate" or "conscious" choice by the municipality. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Peterson*, 588 F.3d at 847 ("The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement."). To plead a plausible failure-to-train claim, Plaintiffs must allege facts that allow the Court to draw a reasonable inference that (1) the City's training procedures were inadequate; (2) the City's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the constitutional violation. *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Here, Plaintiffs do not allege facts sufficient to state a facially plausible failure-to-train claim.

Plaintiffs offer nothing more than a "threadbare recital" of the elements of their cause of action without any factual enhancement, which is insufficient to state a plausible claim as a matter of law. *Iqbal*, 556 U.S. at 677. Showing that a municipality's training program is inadequate requires that the plaintiff allege with specificity how a particular training program is defective. *Zarnow*, 614 F.3d at 170. Plaintiffs make no effort to identify a particular training program or facts to describe the type of training that was being provided to Dallas police officers at or near the time they were arrested. Nor do they plead facts that show how the City's training program was inadequate or deficient. Plaintiffs do not plead facts to plausibly suggest the City's policymaker was deliberately indifferent to the need for proper training. And Plaintiffs allege no facts that allow the Court to draw the reasonable inference that an inadequate training policy directly caused the constitutional violation. Absent such allegations, Plaintiffs' First Amended

Complaint fails to state a plausible section 1983 claim for failure to train.  *See Zarnow*, 614 F.3d at 170 (For liability to attach based on an inadequate training program, a plaintiff must allege with specificity how a particular training program of a city is defective.) (citation omitted). Plaintiffs' "inadequate training" claim against the City should, therefore, be dismissed.

> c.  *Plaintiffs do not identify any municipal policy or custom that deprives citizens of their constitutional rights under the First Amendment.*

As with other claims, Plaintiffs attempt to use the Report as evidence of an official policy of the City to use arrests "to discourage protestors from exercising their First Amendment rights."  (1st Am. Compl. ¶ 88-89.)  They assert that the alleged absence of "any policy adjustments" related to the First Amendment in the Report is evidence that the City has a policy of using arrests to chill First Amendment rights and then wrongly state that that the only relevant statement in the Report was "substantive disapproval of the message of the protest itself."  (*Id.* ¶ 89.)  In fact, the Report states in the "Moving Forward" section specifically cited by Plaintiffs (at ¶ 89), "The Dallas Police Department is committed to protecting the First Amendment right to peaceful assembly."  (App., Ex. 2 at 45; *see also id.* Cover Ltr. at 2 ("The Dallas Police Department is committed to protecting the First Amendment right of individuals to peaceful assembly and the protection of all when peace is threatened.").)

Plaintiffs face a high threshold when bringing a case alleging retaliation for exercise of First Amendment rights against a municipality rather than individual officers.  In *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018), the Supreme Court made clear that the official policy made by high-level municipal policymakers that is required in a retaliatory arrest case against a municipality is quite different from "an ad hoc, on-the-spot decision by an individual officer."  *Id.* at 1954.  The Court explained that the level of evidence required to establish a claim of official policy of retaliation meant there was "little risk of a flood of retaliatory arrest suits

against high-level policymakers." *Id.*   In *Lozman*, for example, the plaintiff pointed to "a transcript of a closed-door city council meeting and a video recording of his arrest" as evidence of an official policy.  *Id.*  Here, however, Plaintiffs do not cite any actual evidence of an official policy but instead describe separate isolated, allegedly unconstitutional incidents and then make a conclusory allegation that the fact that those incidents were not discussed and explicitly condemned in a Report issued while the City is involved in litigation over those incidents is evidence of an official policy of retaliation.  (*See* 1st Am. Compl. ¶¶ 88-90.)

In fact, even if the Report defended the behavior of the officers, that would not be sufficient to constitute an official policy.  As discussed above, there is nothing to tie any alleged policy in the Report to a policymaker of the City, but even if there was, the most Plaintiffs have alleged as to their First Amendment claims is that the Report makes statements supporting the actions of DPD officers.   "Good faith statements made in defending complaints against municipal employees do not demonstrate ratification" of those actions by a policymaker. *Zarnow*, 614 F.3d at 169; *see also Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) ("[A] policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality."); *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986) (ratification precedent "does not stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy").  Any statement or lack thereof in the Report regarding individual officers' alleged actions to retaliate against Plaintiffs for exercising their First Amendment rights simply does not rise to the level of ratification of those actions as an official policy of the City.  Therefore, Plaintiffs' claim for deprivation of First Amendment rights should be dismissed.

> d. *Plaintiffs have failed to plead facts sufficient to permit a reasonable inference of deliberate indifference by the City's final policymaker.*

Even assuming, *arguendo*, that Plaintiffs had pled facts sufficient to permit a reasonable inference of the existence of a City custom based on the alleged police misconduct identified in the complaint, Plaintiffs nevertheless have failed to plead facts from which the Court can draw the reasonable inference that the City's final policymaker was *deliberately indifferent* to a known or obvious risk that the alleged customs would result in deprivations of the constitutional rights alleged.

A city cannot be liable for an unwritten custom unless "[a]ctual or constructive knowledge of such custom" is attributable to a city policymaker. *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). Thus, knowledge on the part of a policymaker that a constitutional violation will most likely result from a given policy or custom is an essential condition underlying section 1983 municipal liability. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). A plaintiff therefore must demonstrate either actual or constructive knowledge of the custom, which is attributable either to the governing body of the municipality or to an official who has been designated as a policymaker. *Bennett v. City of Slidell*, 735 F.2d 861 (5th Cir. 1984). Where an official policy or practice is unconstitutional on its face, it is assumed that a policymaker is aware of both the policy and that a constitutional violation will most likely occur. *Burge*, 336 F.3d 370. Where, however, an alleged policy or custom is facially innocuous, a plaintiff is required to show that "it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (citation and internal quotation marks omitted). "Deliberate indifference of this sort is a stringent test, and a showing of simple or even heightened negligence will not suffice to prove municipal culpability." *Id.* "For an official to act with

deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis*, 406 F.3d at 383 (citing *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (internal quotation marks and citations omitted)).   Thus, a sufficient complaint must provide adequate "factual content" to make deliberate indifference by the City's official policymakers not merely conceivable, but plausible in the context of the facts alleged.  *Iqbal*, 556 U.S. at 678.

Here, Plaintiffs plead no facts that permit a reasonable inference that the City's policymaker was aware of facts from which an inference of could be drawn that a substantial risk of serious harm existed that police officers would unlawfully arrest and use excessive force against peaceful protesters, or suppress constitutionally protected activity because of the manner in which Dallas police officers were trained or that the policymaker actually drew the inference and did nothing to stop it.  Accordingly, for this additional reason, Plaintiffs' section 1983 claims against the City lack facial plausibility, and the Court should dismiss them as a matter of law.

4.     **Plaintiffs' § 1983 claims must be dismissed because Plaintiffs have failed to sufficiently plead facts which show any alleged policy or custom was the moving force behind the alleged violation of their constitutional rights.**

The City has already established that Plaintiffs' complaint wholly fails to plead nonconclusory facts sufficient to permit a reasonable inference that the City's policymaker promulgated or ratified an identifiable, constitutionally deficient City custom having the force of official City policy.  Therefore, Plaintiffs have failed to state a plausible claim for municipal liability, and their claims against the City should be dismissed.  But, even if Plaintiffs had sufficiently pleaded the first two elements, they fail to plead facts to satisfy the third element for municipal liability – legal causation.

The third of the three attribution principles for municipal liability under § 1983 is legal causation.  *Piotrowski*, 237 F.3d at 578.  The Fifth Circuit has explained that a § 1983 plaintiff

must demonstrate a direct causal connection between official municipal policy and a resultant constitutional harm.  As explained in *Fraire v. City of Arlington*:

> [A] direct causal connection must exist between the policy and the alleged constitutional deprivation.  This connection must be more than a mere "but for" coupling between cause and effect.  To form the basis of liability under § 1983, a municipal policy must be affirmatively linked to the constitutional violation and be the moving force behind it.

957 F.2d at 1281 (footnotes omitted), *cited in Doerr v. Sisson*, No. 1:09-CV-00199-GHD, 2013 WL 3340487, at *6 (N.D. Miss. July 2, 2013, *aff'd*, 563 F. App'x 291 (5th Cir. 2014).

In the First Amended Complaint paragraph 84, Plaintiffs plead the conclusion that "[t]he inadequate training has directly caused Plaintiffs' damages."  (1st Am. Compl. at 13 ¶ 84.) However, as previously shown, the complaint omits the factual content necessary to permit a reasonable inference of a direct causal connection between an official inadequate training policy and the police misconduct alleged in the complaint.  Further, Plaintiffs plead no facts to support a causal connection, much less facts that permit the Court to infer an affirmative link between a persistent, widespread practice of City police officers and the allegedly unconstitutional arrests, use of excessive force, or suppression of constitutionally protected activity alleged in the complaint.

Thus, Plaintiffs have not only failed to adequately plead a City policy or custom, but they have also failed to plead that any policy or custom was the moving force behind their alleged constitutional violations.  (1st Am. Compl. at 1-14.)  Because Plaintiffs have failed to plead the necessary legal causation for their § 1983 municipal liability claims against the City to survive dismissal, the Court should grant the City's motion.

## CONCLUSION

For the foregoing reasons, Defendant City of Dallas respectfully requests that Plaintiffs' First Amended Complaint be dismissed in its entirety and with prejudice for failure to state a claim and that the Court grant the City such other relief as the Court finds just.

Respectfully submitted,

CHRISTOPHER J. CASO
City Attorney

*/s/ Stacy Jordan Rodriguez*
Stacy Jordan Rodriguez
Texas Bar No. 11016750
stacy.rodriguez@dallascityhall.com
Executive Assistant City Attorney

Tatia R. Wilson
Texas Bar No. 00795793
tatia.wilson@dallascityhall.com
Executive Assistant City Attorney

Kathleen M. Fones
Texas Bar No. 24050611
kathleen.fones@dallascityhall.com
Senior Assistant City Attorney

Dallas City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
214-670-3519 / fax 214-670-0622

**ATTORNEYS FOR DEFENDANT
CITY OF DALLAS**


**CERTIFICATE OF SERVICE**

I certify that on October 28, 2020, I electronically filed the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept this notice as service of this document by electronic means.

*s/ Stacy Jordan Rodriguez*
Stacy Jordan Rodriguez

23