IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| YOLANDA DOBBINS, LILY GODINEZ, and MEGAN NORDYKE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>V.<br><br>THE CITY OF DALLAS,<br><br>Defendant. | § § § § § § § § § § § § § § | No. 3:20-cv-1727-K |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE <u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiffs Yolanda Dobbins, Lily Godinez, and Megan Nordyke, on behalf of themselves and all others similarly situated, and through a first amended complaint, seek damages from Defendant City of Dallas "for acts of unlawful arrest, excessive force, inadequate training, and negligent hiring, retention, and supervision, First Amendment deprivations committed by members of the Dallas Police Department as agents of [the City]." Dkt. No. 15, ¶ 1.

More specifically, Plaintiffs allege that the City "subjected lawful protestors to unlawful arrest and excessive force," and they also "seek injunctive relief to put an end to [the City's] policies that violate [42 U.S.C.] § 1983 and the U.S. Constitution and that continue to threaten Plaintiffs' constitutional right to peacefully and nonviolently protest in the City of Dallas." *Id.*; *see also, e.g., id.*, ¶ 3 (alleging that the

City "arrested citizens participating in lawful protest throughout the city"; that its "officers ignored protestors' peacefulness and their attempts to comply with officer directions, instead opting to punish people for their presence and their protests, not their actions"; that the City "used the arm of the law to put a stranglehold on protected expression that was critical of them"; and that its "officers arrested protestors *en masse*, employing excessive force in the process with the clear intent to intimidate protestors and chill free speech").

The City moved to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 23. Plaintiffs responded. *See* Dkt. No. 25. The City replied. *See* Dkt. No. 26. And United States District Judge Ed Kinkeade referred the motion to dismiss to the undersigned United States magistrate judge, under 28 U.S.C. § 636(b), for hearing, if necessary, and findings and recommendations. *See* Dkt. No. 27.

And, after carefully considering the pleadings and the parties' briefing, the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion to dismiss.

## Legal Standards

In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555; *see also Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) ("There is no heightened pleading standard for § 1983 claims against municipalities. To survive a motion to dismiss, the complaint need not contain detailed factual allegations but still must state sufficient facts to establish a plausible claim on its face." (citing *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018))).[1]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

---

[1] *Cf. Sewell*, 974 F.3d at 582 ("Although this framework is one-sided, the issue 'is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.' The other side will have its say later." (quoting *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *vacated on other grounds*, 113 F.3d 1412 (5th Cir. 1997))).

possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.2d at 899

("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

## Analysis

"A person may sue a municipality that violates his or her constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson*, 994 F.3d at 482 (quoting 42 U.S.C. § 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

At the pleading stage, a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694; *see also Hutcheson*, 994 F.3d at 483 (rejecting the argument that a district court errs by dismissing a *Monell* claim without first analyzing the underlying constitutional violation).

So, even if they have alleged plausible constitutional violations, Plaintiffs survive the City's motion to dismiss their *Monell* claims only by

> identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)."

> *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482; *see also Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 497 & n.11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs" (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010))).

Starting with the first prong, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted). And, "'[t]o establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo v. City of Dallas, Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 582 (5th Cir. 2001)); *see also James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) ("Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" (quoting *Piotrowski*, 237 F.3d at 579 (quoting, in turn,

*Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)))).

Responding to the motion to dismiss, Plaintiffs argue that they have alleged "a city policy enacted by the Dallas police to curb protests and assemblies and intimidate protestors at whatever costs, including violating their First and Fourth Amendment rights." Dkt. No. 25 at 17-18; *see id.* at 15-18 (pointing to ¶¶ 66-69 and 46-49 of their first amended complaint). The specific facts they provide to support this allegedly official policy of the City are therefore:

> 46. Plaintiffs, and those similarly situated, all spent the night in the Dallas County jail.
>
> 47. Plaintiffs, and those similarly situated, were either peacefully participating in the protests or attempting to leave safely when arrested.
>
> 48. Plaintiffs, and those similarly situated, were released the following day when they each paid a bond of at least $500. This bond has yet to be refunded to any of the Plaintiffs.
>
> 49. Plaintiffs, and those similarly situated, were not informed that their charges would be dropped until being interviewed by the Dallas police in September 2020.
>
> ….
>
> 66. Defendant had a policy and/or practice of unlawfully arresting peaceful protestors without probable cause. Officers employed by Defendant systematically arrested protesters regardless of whether they complied with instructions when asked, created any immediate danger of damage to property or injury to persons, obstructed law enforcement, used any force toward anyone, ever moved on to a roadway or highway, or committed any violent acts.
>
> 67. As evidence of a policy and/or practice adopted by the City of Dallas, Police Chief Reneé Hall and the Dallas Police Department reviewed the actions of Dallas Police Officers during the protests in an August 14, 2020 After-Action Report presented to the City Manager and

> the Dallas Public Safety Committee and wholly approved the actions of the officers. In fact, the Report affirmatively lauded the officers for complying with Defendant's policies, stating that "[o]fficers displayed heroic acts of restraint and worked within the department's Use of Force Policies."
>
> 68. Further, the After-Action Report explicitly states that the Defendant adopted a "Mass Arrest Plan" in response to the peaceful protests, indicating an explicit policy from leadership of arresting protesters in large groups without regard to the probable cause underlying that arrest.
>
> 69. At no point in the Report is any disapproval expressed for any of the actions taken by Dallas police officers but only confirmation that all officers acted within Department policies. No officers have been disciplined.

Dkt. No. 15 at 7, 10-11.

First, as will be further discussed below, Plaintiffs fail to "link" their alleged constitutional violations to "a 'policy statement formally announced by an official policymaker.'" *Brown*, 985 F.3d at 497 (quoting *Zarnow*, 614 F.3d at 168-69, describing the first of "two forms" that "[a]n 'official policy' may take").

And, insofar as Plaintiffs plead an official policy by alleging a widespread practice that equates to a custom, they have not plausibly alleged the policy prong because the August 2020 mass arrests underlying their constitutional claims are themselves isolated in time and they cite no similar violations. That is,

> "[i]f actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.

*Webster*, 735 F.2d at 842.

> [And p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired ....

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (footnotes omitted); *see, e.g.*, *Case v. City of New York*, 233 F. Supp. 3d 372, 405-06 (S.D.N.Y. 2017) ("Plaintiffs adequately state a *Monell* claim based on the City's failure to train. Plaintiffs point to a number of cases spanning the period from 2000 to 2012 that demonstrate 'a pattern and practice of constitutional abuse' involving the use of mass arrest policies and practices similar to the ones that led to their constitutional deprivations." (citations omitted)); *cf. Pinedo*, 2015 WL 5021393, at *9 ("Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." (citations omitted)).

But, even if the Court accepts that Plaintiffs have provided enough factual content to plausibly allege a policy, *see, e.g.*, *Balle v. Nueces Cnty., Tex.*, 952 F.3d 552, 559 (5th Cir. 2017) ("[P]leadings are sufficient when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force behind municipal employees' [alleged constitutional violations]." (citing *Colle v. Brazos Cnty.*, 981 F.2d 237, 245 (5th Cir. 1993))), Plaintiffs' *Monell* claims fail on the second prong.

Examining the second *Monell* prong – a policymaker who can be charged with actual or constructive knowledge of the identified official policy or custom – a complaint need "not specifically identify [the municipality's] policymaker," *Balle*, 952 F.3d at 559, because that identity "is a question of state law," and "courts should not grant motions to dismiss § 1983 cases 'for imperfect statement of the legal theory,'" *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 284-85 (5th Cir. 2016) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988), then quoting *Johnson*, 574 U.S. at 11).

Instead, the well-pleaded facts must "establish that the challenged policy was promulgated or ratified by the city's policymaker." *Id.* at 285; *see also Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("Because the 'specific identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy. In other words, plaintiffs must plead facts that sufficiently connect the [actual] policymaker ... to the allegedly unconstitutional policy." (citing *Groden*, 826 F.3d at 284, 286)).

"[U]nder Texas law, the final policymaker for the city of Dallas is the Dallas city council." *Groden*, 826 F.3d at 286 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (citing, in turn, TEX. LOCAL GOV'T CODE ANN. § 25.029)); *see also Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 246 (5th Cir. 2021) (per

curiam) ("'A "policymaker" must be one who takes the place of the governing body in a designated area of city administration.' *Webster*, 735 F.2d at 841 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)). 'City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. [T]hey are not supervised except as to the totality of their performance.' *Bennett*, 728 F.2d at 769." (citation modified)).

Plaintiffs allege that the applicable "policy and/or practice" of the City is evidenced in an After-Action Report that then-Chief Reneé Hall and the Dallas Police Department "presented to the City Manager and the Dallas Public Safety Committee." Dkt. No. 15, ¶ 67. But these allegations do not connect the alleged policy to the Dallas City Council itself. For example, "[t]he plaintiff in *Groden* carried his burden of connecting the policy to the city council by alleging that the city 'publicly announced' the policy and that its 'spokesman' gave 'media interviews describing the new policy.'" *Peña*, 879 F.3d at 623 (quoting *Groden*, 826 F.3d at 286).

So the facts alleged in *Groden* allowed the Court to reasonably infer that the City Council – the final policymaker for the City – approved a policy. But, here, the facts alleged are that a committee of the City Council and the City Manager were presented a report that Plaintiffs allege contains the City's policy, not that the report was presented to the entire City Council or, more importantly, that the report was approved by the Council. *See Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson, Miss.*, 817 F.3d 163, 166-67 (5th Cir. 2016) (reviewing authority and concluding that

the United States Court of Appeals for the Fifth Circuit has "affirmed that officials are not final policymakers when a supervisory board has the authority to accept or reject their decisions").

Nor do Plaintiffs allege facts to allow the Court to reasonably infer that the City Council delegated policymaking – as opposed to decision-making – authority to Chief Hall or to the City Manager, as "[t]here is a fundamental difference between decision makers and policymakers," such that "'[d]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function.'" *Martinez*, 846 F. App'x at 246 (quoting *Bolton*, 541 F.3d at 548-49); *see also, e.g.*, *Reynolds v. City of Commerce, Tex.*, No. 3:19-cv-1577-E, 2021 WL 268819, at *3 (N.D. Tex. Jan. 27, 2021) ("Under Texas law, the final policymaker for a city is the city council. Here, the City has empowered the Commission to, among other things, enforce ordinances related to dangerously damaged or deteriorated buildings or improvements. Although the Commission may be a final decisionmaker in administering those ordinances, the council is the final policymaker with respect to those ordinances." (citations omitted)).

In sum, Plaintiffs have provided no facts that plausibly allege – or from which the Court may reasonably infer – that a final policymaker for the City of Dallas approved the policy that Plaintiffs allege underlies the claimed constitutional violations. This absence of "official action or imprimatur" cuts off municipal liability. *Piotrowski*, 237 F.3d at 578; *see Martinez*, 846 F. App'x at 246-47 ("A municipality is

- 12 -

liable *only* for acts directly attributable to it 'through some official action or imprimatur.'" (citation omitted)).

So the Court need not address the third *Monell* prong, *see Brown*, 985 F.3d at 497 & n.11; *Zarnow*, 614 F.3d at 168-69, but it should consider whether Plaintiffs have plausibly alleged municipal liability under a failure-to-train theory since their third cause of action is for "Inadequate Training," *see* Dkt. No. 15 at 13; *id.*, ¶ 84 ("Defendant [is] also liable because (1) [its] training procedures relating to protest management, arrest and mass arrest procedures, interactions with community members, and the use of force are inadequate; (2) Defendant's failure to adopt adequate policies and/or failure to sufficiently train officers on such policies constitutes deliberate indifference to the constitutional rights of the public; and (3) the inadequate training has directly caused Plaintiffs' damages.").

They have not.

> "[T]he failure to provide proper training may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." "In resolving the issue of a [municipality's] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." A plaintiff must [allege and – then ultimately – ]show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing violation of plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy.

*Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989), then citing *Sanders-Burns v. City of Plano*, 594

F.3d 366, 381 (5th Cir. 2010); *Valle v. City of Hous.*, 613 F.3d 536, 544 (5th Cir. 2010); *Pineda*, 291 F.3d at 332).

As for the second requirement, "'the connection must be more than a mere 'but for' coupling between cause and effect.' 'The deficiency in training must be the actual cause of the constitutional violation.'" *Id.* (quoting *Valle*, 613 F.3d at 546).

And "[d]eliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Valle*, 613 F.3d at 547. As such, "a plaintiff must [allege – and then ultimately – ]show that

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Wright v. City of Garland, Tex.*, No. 3:10-cv-1852-D, 2014 WL 5878940, at *4-*5 (N.D. Tex. Nov. 13, 2014) (quoting *Valle*, 613 F.3d at 547 (quoting, in turn, *City of Canton*, 489 U.S. at 390)).

> Deliberate indifference may be found in two types of situations: (1) a general failure to provide adequate training in light of the foreseeable serious consequences that could result, and (2) a municipality fails to act in response to the specific need to train a particular officer. *See City of Canton*, 489 U.S. at 390; *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000).

*Hobart v. Estrada*, 582 F. App'x 348, 357 (5th Cir. 2014) (citations modified).

Plaintiffs' failure-to-train allegations are conclusory. They allege that the City's training procedures are inadequate but fail to allege how those procedures are

inadequate. *See Anokwuru v. City of Hous.*, 990 F.3d 956, 965 (5th Cir. 2021) ("Even resolving all questions of fact and any ambiguity in controlling law in [the plaintiff's] favor, '[i]n order for "liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective."'" (quoting *Zarnow*, 614 F.3d at 170 (quoting, in turn, *Roberts v. City of Shreveport*, 397 F.3d at 287, 293 (5th Cir. 2005))); citation omitted).

Turning to deliberate indifference, Plaintiffs do not allege that the City failed to respond to a specific need to train a particular officer. Accordingly, to allege deliberate indifference would "usually" require that a plaintiff allege "a pattern of similar violations." *Id.* (citing *Valle*, 613 F.3d at 547); *see also Littell*, 894 F.3d at 624 ("This proof-by-pattern method is 'ordinarily necessary.'" (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409, 117 (1997))). But, as pointed out above, Plaintiffs allege no pattern of similar violations.

That leaves the single-incident exception to allege deliberate indifference. "But the plaintiffs cannot avail themselves of that exception because they do not allege that there was 'no training whatsoever.'" *Hutcheson*, 994 F.3d at 483 (quoting *Peña*, 879 F.3d at 624); *see* Dkt. No. 15, ¶ 84 (alleging that the City is "liable because [its] training procedures relating to protest management, arrest and mass arrest procedures, interactions with community members, and the use of force are inadequate"); *see also Jason v. Tanner*, 938 F.3d 191, 199 (5th Cir. 2019) ("We found that the facts [in *Littell*] 'mirror[ed] *Canton*'s hypothetical in all material respects.'

But here, there was training. There was also a monitoring system in place. Again, it just failed to prevent the attack. Put differently: square peg, round hole. *Littell* was about a supervisor who didn't train his subordinates; not even at all. Had he adequately trained them, they would've known not to strip search young girls." (footnote omitted)).

In sum, Plaintiffs also have not alleged municipal liability under a failure-to-train theory.

## Recommendation

The Court should grant the Defendant City of Dallas's motion to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 23].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 24, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE