IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| YOLANDA DOBBINS, LILY GODINEZ, and MEGAN NORDYKE, on behalf of themselves and all others similarly situated, § § § § § | | |
| Plaintiffs, § | | |
| § | | |
| V. § | No. 3:20-cv-1727-K | |
| § | | |
| THE CITY OF DALLAS, § § | | |
| Defendant. § | | |

**MEMORANDUM OPINION AND ORDER**

The Court referred the City of Dallas's motion to dismiss Plaintiffs' first amended complaint under Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 23] to United States Magistrate Judge David L. Horan under 28 U.S.C. § 636(b) for hearing, if necessary, and findings and recommendations. *See* Dkt. No. 27. Judge Horan entered findings of fact and conclusions of law recommending that the Court grant the motion. *See* Dkt. No. 28. Plaintiffs objected. *See* Dkt. No. 29. And the City responded. *See* Dkt. No. 30.

In addition to alleging a plausible constitutional violation, to allege liability against the City, Plaintiffs must plausibly allege that a policy or custom of the City was the moving force behind the alleged constitutional violation. That generally requires that Plaintiffs allege "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation

whose moving force is that policy (or custom)." *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Here, Judge Horan first found that Plaintiffs failed to plausibly allege municipal liability because they failed to link their alleged constitutional violations to either a formal policy or a widespread practice amounting to a custom. *See* Dkt. No. 28 at 6-9. He then found that, even if Plaintiffs have alleged a policy or custom, they failed to allege facts that allow the Court to reasonably infer that the final policymaker for the City (its City Council) approved the policy or custom. *See id.* at 9-12. Judge Horan next found that Plaintiffs do not allege facts from which the Court may infer that the City Council delegated its policymaking authority (not just decision-making authority) to either its city manager or its chief of police. *See id.* at 12-13. And he finally found that Plaintiffs failed to allege municipal liability under a failure-to-train theory. *See id.* at 13-16.

Plaintiffs raise three objections. *See* Dkt. No. 29. None are persuasive.

Plaintiffs first object that they have plausibly alleged a policy or custom because they have alleged facts showing that the City Council "ratified the 'Mass Arrest' policy that resulted in mass unlawful arrests and Dallas police officers using unconstitutional excessive force against peacefully protesting citizens." *Id.* at 7-10. Plaintiffs cite an employment discrimination decision in support of their theory of ratification, that

"[r]atification" has been defined to mean "adoption, confirmation or

> failure to repudiate prior unlawful acts which were not legally binding at a time when the [defendant] had the right and knowledge of facts necessary to repudiate such conduct...." *Prunty v Arkansas Freightways, Inc.*, 16 F.3d 649, 653 (5th Cir. 1994). The Report compiled by the Chief of Police and then presented to the City Council through the City Manager and a sub-committee of the City Council, satisfies this requirement. The City Council, apprised of the Report and "Mass Arrest Plan," failed to repudiate such prior unlawful behavior, thus ratifying it.

*Id.* at 9.

This does not correctly reflect ratification in the context of municipal liability. Simply not repudiating a report does not mean that a policymaker ratifies it. If so, that would cross the line into impermissible respondeat superior liability for a municipality. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009) (holding that, "if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final" (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); emphasis added).

Moreover, the Fifth Circuit "has limited the theory of ratification to 'extreme factual situations,'" *id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)), such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back, *see id.* (citations omitted)); *accord Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017) ("Ratification ... is limited to 'extreme factual situations.'" (quoting *World Wide Street Preachers Fellowship v. Twn. of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (quoting, in turn, *Peterson*, 588 F.3d at 848))); *see also Davidson*, 848 F.3d at 395-96 ("Here, the underlying conduct by Officers Flagg and

Jones, while unconstitutional, was not sufficiently extreme to qualify for a finding of ratification." (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985))).

The Fifth Circuit has "also explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 849 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)); *accord Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010); *Davidson*, 848 F.3d at 395; *see, e.g.*, *Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) (per curiam) ("The only evidence of ratification Medina identifies is that Ortiz accepted the officer's use of force report, refused to turn over evidence until the lawsuit was filed, and defends the deputies' actions in this case. None of these allegations show that Ortiz approved of the use of excessive force or the denial of medical care." (citation omitted)).

Plaintiffs further argue that "[t]he lack of repudiation, paired with [an alleged] confirmation"—their allegation that the After-Action Report "confirm[ed] that all officers acted within Department policies," Dkt. No. 15, ¶ 69—is enough to satisfy this preliminary threshold under *Monell*; that is, it does enough to 'insulate a complaint from dismissal under Rule 12(b)(6), even if municipal liability is based on actions by the City's police chief.' *Hughes v. City of Dallas, Texas*, 2020 WL 4670659 at *4 (N.D. Tex. 2020)." Dkt. No. 29 at 10.

In *Hughes*, however, Judge Boyle distinguished that case from *Flanagan v. City of Dallas, Texas*, 48 F. Supp. 3d 941 (N.D. Tex. 2014). In *Flanagan*, the court allowed the

case to proceed to discovery because

> Plaintiffs' allegation regarding Councilman Caraway's statement is so conclusory that it cannot support Plaintiffs' allegation that the City has delegated to Chief Brown policymaking authority in the area of police training, even if the Court has its doubts about the veracity of such statement. Although Plaintiffs could have added more specificity to their allegation by including the date on which Caraway made his statement and to which media source, for example, Plaintiffs were not required to plead so specifically at this stage. Moreover, despite the handful of cases Defendant cites, all of which are several years old, and the City Charter that purports to limit Chief Brown's authority, it is plausible that the City Council has more recently delegated policymaking authority to him in the area of training his officers in the use of deadly force.

*Id.* at 951.

Similar to the first amended complaint here, Hughes's complaint lacked "similar factual allegations to show that it is plausible that [the Dallas police chief] was a final policymaker, notably under a theory that [the chief] was acting under policymaking—not decisionmaking—authority delegated to [the chief]." 2020 WL 4670659 at *4. So, as in *Hughes*, Plaintiffs have not alleged sufficient factual content to entitle them to discovery.

Plaintiffs' first objection is therefore **OVERRULED**.

Plaintiffs next object that they have plausibly alleged a policy or custom on the basis that

> a practice becomes a policy is if the actions of city employees occurred for so long <u>or so frequently</u> that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.), *on reh'g*, 739 F.2d 993 (5th Cir. 1984) (emphasis added). Plaintiffs each were treated egregiously and

> unconstitutionally pursuant to the "Mass Arrest Policy" and Defendant failed to take any precautionary measures to prevent that action, and after the fact, issued an "After Action Report" applauding the actions of the Dallas Police that was then reviewed by Defendant and ratified.

Dkt. No. 29 at 11.

Relatedly, their final objection is that they have indeed alleged failure-to-train liability against the City because

> [e]nacting a "Mass Arrest Plan" in the face of what promised to be some of the largest, well-attended protests in Dallas' history is an event where there is a clear need for specific training on how to institute such a plan while also upholding peaceful protestors' constitutional rights. *[Connick v. Thompson*, 563 U.S. 51, 63-71 (2011)]. Defendant's failure to train the police on how to lawfully institute the Mass Arrest Plan resulted in many citizens being unlawfully arrested, and suffering injuries from the Dallas Police department's use of excessive force. Further, Plaintiff's allegation that the Report ratifies the Mass Arrest Plan and therefore, the Defendant choosing to retain the program and continuing to fail to adequately train the police on the correct policies in enacting the Mass Arrest Plan constitutes deliberate indifference that is sufficient to withstand Defendant's Motion to Dismiss.

Dkt. No. 29 at 14-15.

Again, the Court rejects Plaintiffs' theory of ratification in this context. And the Court agrees with Judge Horan. A widespread practice equates to a custom (and thus a policy of the City) because the City is on "notice of a pattern of similar violations." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (footnote omitted; further noting that, "[w]hile the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired" (footnote omitted)); *see, e.g.*, *Case v. City of New York*, 233 F.

- 6 -

Supp. 3d 372, 405-06 (S.D.N.Y. 2017) ("Plaintiffs adequately state a *Monell* claim based on the City's failure to train. Plaintiffs point to a number of cases spanning the period from 2000 to 2012 that demonstrate 'a pattern and practice of constitutional abuse' involving the use of mass arrest policies and practices similar to the ones that led to their constitutional deprivations." (citations omitted)); *see also Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) ("Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." (citations omitted)).

The Court therefore **OVERRULES** Plaintiffs' remaining objections.

In sum, the Court has reviewed *de novo* those portions of the proposed findings, conclusions, and recommendation to which objection was made, and reviewed the remaining proposed findings, conclusions, and recommendation for plain error. Finding no error, the Court **ACCEPTS** the Findings, Conclusions, and Recommendation of the United States Magistrate Judge.

Further, considering that Plaintiffs have already filed an amended complaint and considering the substance of their objections, the Court is of the opinion that Plaintiffs have been afforded the opportunity to allege their best case. The Court will therefore separately enter judgment **DISMISSING THIS CASE WITH PREJUDICE**.

**SO ORDERED.**

**Signed August 25th, 2021**.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE